and ratifying the grant theretofore made to the defendant railroad company.

I am aware of the fact that the learned Appellate Division of our Department in this very case has held that the rule that, where evidence dehors a land patent from the state is required to show the invalidity thereof, the patent can only be avoided in a direct proceeding to review the action of the land commissioners, or by a suit in equity to vacate the patent, does not prohibit a suit in equity by an individual to remove a cloud on his title created by such patent, but I do not understand that the learned Appellate Division by that announcement decides that a junior grantee or patentee who had no interest in or claim to the land at the date of the granting of the senior patent can by a suit in equity set aside the earlier grant, because such an interpretation of that decision would be in conflict with the case of Biddle Boggs v. Mining Company, 14 Cal. 279, and the other cases cited in the opinion of the Appellate Division, Lally v. N. Y. Central & Hudson River Railroad Co., 123 App. Div. 35, 107 N. Y. Supp. 868. For instance, in the case of Biddle Boggs v. Mining Company, the court said, "Individuals can resist the conclusiveness of the patent only by showing that it conflicts with the prior rights vested in them;" but in any event, in my opinion, the grant to the defendant was valid, and, being prior to the plaintiff's grant, she has no title to the 67-foot strip in question, under the grant subsequently made to Jackson, the former owner of her uplands.

My conclusions on the whole case are that the maps produced from the office of the Secretary of State and county clerk are genuine and true copies of the map attached to the original grant to the defendant, and that they were made and filed in accordance with the statute, and that the grant of 1873 to the defendant, including the lands now claimed by the plaintiff, was and is valid, as against the plaintiff, and was prior to the plaintiff's grant, which expressly excepted the lands conveyed to the defendant, and that the plaintiff cannot maintain this action; and I direct judgment accordingly.

---

(128 App. Div. 799.)

### MENEELY v. KINSER CONST. CO.

(Supreme Court, Appellate Division, Third Department. November 25, 1908.)

MASTER AND SERVANT (§ 320*)—CONSTRUCTION—REMEDY OF RIPARIAN OWNER.
    Where the obstruction of a stream was involved in the state plan for the construction of a barge canal, and the stream was obstructed by the contractor by direction of the state engineer, the remedy of a riparian owner whose rights were thereby impaired was against the state alone through the Court of Claims, and the contractor was not liable.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1261; Dec. Dig. § 320.*]

Appeal from Trial Term, Washington County.

Action by George Meneely against the Kinser Construction Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed and new trial granted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Edgar Hull (Edgar T. Brackett, of counsel), for appellant.
Erskine C. Rogers, for respondent.

SMITH, P. J. The defendant was constructing the new barge canal near Dunham's Basin, in Washington county, N. Y. In constructing one of the spoil banks according to the direction of the state engineer, he dammed up a small ditch, which was called "Dead Creek," and which operated to drain certain lands northeasterly thereof. This plaintiff was the lessee of about 3½ acres of land situated alongside of Dead creek about a mile and a half northeasterly of the place where the same was filled up. In September, 1907, there were heavy rains. His land was overflowed, and a potato crop which he had planted was damaged. The plaintiff's claim is that the obstruction of Dead creek by this spoil bank caused the water to flow back, over, and upon his land, and, also, that it prevented the drainage of his land which would otherwise have occurred to the damage of his crop thereupon, and for which the defendant is claimed to be liable.

The first defense is that defendant was acting under the authority of the state, which had the right to locate its banks where it would, subject only to its liability for compensation for damage to be obtained through the Court of Claims. It seems clear that the state has the right to dam up this stream without furnishing another outlet therefor if it had deemed necessary in the prosecution of this work, and that damages could have been procured therefor through the Court of Claims. If the state had the right so to do, its servant acting in its behalf, or one who by contract does its work, is guilty of no wrong in so doing. The remedy of a riparian owner whose rights have been impaired is against the state which has assumed to create the obstruction of the stream. The question is not one of negligent construction. True, the contractor might have provided temporarily for such waters, but such a provision could only be temporary until the spoil bank were built a little further north. In the case of Covert v. Cranford, 141 N. Y. 525, 36 N. E. 597, 38 Am. St. Rep. 826, the construction of the work did not necessarily involve the interruption of the stream. Here the obstruction of the stream was involved in the state plan. The stream was obstructed by direction of the state engineer. The state contract made no provision for caring for the waters of Dead creek. The contractor is under the contract liable for damage caused during the construction of the work. But this does not mean for damages to riparian rights which have been appropriated by the state. For such injuries the state alone is liable. The judgment and order should therefore be reversed, and a new trial ordered, with costs to appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.