AMERICAN WOOLEN COMPANY, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

Claims Nos. 2195-A, 15859.

(State of New York, Court of Claims, February, 1920.)

Claims — against state — when motion to dismiss claim for damages granted — notice of intention — meaning of '' appropriation '' — Barge Canal Act (Laws of 1903, chap. 147, as amended) — Laws of 1918, chap. 606 — Code Civ. Pro. § 264.

Where, as the result of the work of the state in raising the crests of two state dams in the Oswego river, between which was claimant's woolen mill operated by power derived from the upper dam, claimant was for about three months deprived of all its water power by reason of a coffer dam which was necessary to enable the state to carry out its construction work at the upper dam, a claim for the damages alleged to have been sustained because of such injury is not an " appropriation " claim within the meaning of the Barge Canal Act (Laws of 1903, chap. 147, as amended) and cannot be brought within the provisions of chapter 606 of the Laws of 1918 nor of section 264 of the Code of Civil Procedure.

A notice of intention to bring a claim against the state not having been filed within six months of the accrual of the damages complained of, a motion to dismiss the claim will be granted on the ground that the court is without jurisdiction to hear it.

Court of Claims, February, 1920.     [Vol. 110.

Motion to dismiss claims.

Davies, Auerbach & Cornell (Charles H. Tuttle and William Nottingham, of counsel), for claimant.

Edward J. Mone, Deputy Attorney-General, for state.

Ackerson, P. J.   On July 21, 1909, and many years prior thereto the above-named claimant owned about fifteen and two-tenths acres of land on the west side of the Oswego river at Fulton, N. Y.  Said ownership extended to the center of the Oswego river, and carried with it such rights to use the water of said river as had not theretofore been acquired by the state.  The claimant maintained on this property at that time a large woolen mill employing about 1,600 hands. This mill was operated by water power derived from the use of a portion of the surplus water of the Oswego river impounded by a dam belonging to the state of New York and known as the upper Fulton dam.  About 2,500 feet down stream from this dam was another state dam known as the lower Fulton dam.  These dams had been constructed many years previously by the state in connection with the building or improving of the Oswego canal.  The evidence does not disclose the exact date of the construction of these dams by the state nor the obligations it then assumed to the riparian owner at that place by reason of such construction.  But these dams were in all probability constructed by the state during the building of the Oswego canal in about 1826, and the state then undoubtedly acquired the right to take from the Oswego river at this point by means of this upper Fulton dam sufficient water for the purposes of the old Oswego canal; and, for the purposes of this

motion, we will assume, in accordance with the principle enunciated by Judge Rodenbeck in his opinion in the *Fulton Light, Heat & Power Company* case that, subject to the rights of the state to supply the old canal with water, claimant was at the times when it is alleged that the state invaded its rights, entitled to the use, at the head afforded by the then existing upper Fulton dam, of so much of one-half of the surplus water impounded by that dam as was available through the bulkhead openings which existed in the westerly end of said dam prior to July, 1909. *Fulton Light, Heat & Power Co.* v. *State of New York*, 13 Court of Claims Rep. 285.

This was the situation of the parties at this point when the state in accordance with chapter 147 of the Laws of 1903 proceeded to improve the Oswego canal. Under this scheme of enlargement it became necessary for the state to partially reconstruct its two dams at Fulton. The elevations of the two old dams at Fulton were as follows: Upper dam, 347.80, barge canal datum; lower dam, 331.85, barge canal datum, affording the claimant a gross head of water of about 15.95 feet, or, as appears from the evidence, a net working head of about 14 feet.

On November 5, 1912, the contractor with the state for the improvement of a section of the Oswego canal embracing the sites of these two dams completed the work of raising the crest of the upper dam to 352.8 feet, barge canal datum. About January, 1915, it also completed the work of raising the crest of the lower dam to 335 feet, barge canal datum. This work resulted, therefore, in raising the crest of the upper dam 5 feet and of the lower dam 3.15 feet, giving the claimant a net increase in head at its mill of 1.85 feet.

On July 21, 1909, the state contractor, in order to progress his work on the upper dam, entirely shut off

the water from claimant's mill by means of a coffer dam. This condition continued until October 18, 1909, when the coffer dam was taken out. For this period the claimant seeks to recover the moneys disbursed by it in producing, by steam, power equivalent to the power which it theretofore produced by water, of the use of which it was deprived during this period, together with the moneys disbursed by it in installing a supplementary steam plant to supply this power.

On August 16, 1909, the state contractor under like authority began the work of raising the crest of the lower dam. This work continued until November 27, 1909, when 300 feet of this crest had been raised from 331.85, barge canal datum, to 335, barge canal datum, amounting to 3.15 feet. This reduced the working head at claimant's mill by about .62 feet, because it raised the elevation of the water in the pool below the mill; this, according to the evidence, resulted in a corresponding loss of water power from October 18, 1909, to September 7, 1912. To supply this power by steam cost claimant $8,466, which sum it seeks to recover.

On September 7, 1912, the claimant discarded all water power temporarily and began the construction of a new hydro-electric plant. This plant was to be constructed in one year, and there was no reason, so far as the state is concerned, why it should not have been. So far as any basis for damages against the state is concerned, claimant concedes that said hydro-electric plant may be considered as having been completed September 7, 1913.

The claimant contends that the work of the state in raising the crests of the two dams as aforesaid so changed the elevation of the water in the river at its plant and above it as to necessitate the reconstruction of its wheelpits or the construction of an entirely new

power plant in order to make such readjustment as would enable it to use the water at the increased elevation caused by the construction work of the state, as aforesaid.

The claimant constructed an entirely new power plant containing three units with a rating of 1,000 horse power each, but actually developing about 3,600 horse power. This plant also was made large enough to contain two or three more such units in the future as they should be needed.

The old turbines which it had before the new construction had a rated capacity of 2,965 horse power.

By reason of the necessity of constructing such new power plant, the claimant contends it is entitled to two other items of damage, to wit:

(a) The value of the use of the water power of which it was deprived from September 7, 1912, to September 7, 1913.

(b) The amount of money necessarily spent in the construction of its new power plant in order to put it in as good condition as it was before interference by the state.

We now have outlined the situation in this case; the existence of the property of the claimant, and its relation to the two state dams at Fulton. We have stated what the state did there, how its operations affected the water power rights of the claimant, and the four items of damage which the claimant contends it has suffered by reason thereof.

To recapitulate, the situation may be stated as follows:

1. On July 21, 1909, and many years previous thereto, the state owned and maintained two dams across the Oswego river at Fulton which were a part of the necessary structures for the maintenance and operation of the Oswego canal.

27

2. Claimant owned a large woolen mill on the west bank of the Oswego river between these two dams operated by water power derived from the upper one of these dams.

3. Claimant owned to the center of the Oswego river at this point. Its water power rights may be assumed to be as before stated.

4. The state in pursuance of legislative authority derived from the act known as the Barge Canal Law, being chapter 147 of the Laws of 1903, in the improvement of the Oswego canal as therein authorized reconstructed these two dams, as follows:

(a) It raised the elevation of the crest of the upper dam from 347.80, barge canal datum, to 352.80, barge canal datum. It also constructed new bulkhead openings at the westerly end of said dam.

(b) It raised the crest of the lower dam from 331.85, barge canal datum, to 335, barge canal datum.

It thereby increased the head at the upper Fulton dam about two feet without substantially diminishing the quantity of water available for claimant's use, resulting in a large increase in the potentiality of claimant's water power.

5. In the course of this reconstruction work on the part of the state it deprived claimant of all of its water power from July 21, 1909, to October 18, 1909, by means of a coffer dam which was necessary in order to enable the state to carry out its reconstruction of the upper dam.

For this interference with its water power claimant contends that it is entitled to a sum of money from the state equal to the cost of supplying itself with substitute steam power during that period, plus the expense of installing its steam plant.

6. By reason of the state's operations in elevating the crest of the lower dam the claimant contends that

the head of water available at its plant was reduced by about sixty-two one-hundredths feet, whereby it suffered a partial loss of its water power from October 18, 1909, to September 7, 1912, and for which it demands an amount of money representing the value of the use of the power of which it was deprived during that period.

7. Claimant contends that the change in the elevation of the water in the Oswego river at and above its mill caused by the reconstruction of the two dams as aforesaid necessitated the construction by it of a new power plant. While it was engaged more than a year in the construction of this new plant, yet it concedes that for the purposes of this case it may be considered that the construction of this plant occupied a period commencing September 7, 1912, and ending September 7, 1913. For this period claimant contends that it is entitled to damages against the state amounting to the value of the use of the water power of which it was deprived together with the amount of money it necessarily expended in constructing its new power plant.

For all of these four items of damage aforementioned the claimant filed a claim against the state on January 23, 1915.

Claimant also filed a notice of intention to file the aforesaid claim on March 27, 1914, and an amended notice of intention on April 2, 1914.

It will be observed that none of the injury the claimant complains of was caused by any physical invasion of its lands and structures by the officers or agents of the state; but that it all resulted from the work of the state on its own structures outside of the limits of claimant's property.

Claimant also refiled this claim on May 5, 1918. Attached to it was the statement: " This statement of

claim is refiled, in view of the enactment of chapter 606 of the Laws of 1918.'' This duplicate of the original claim so refiled had attached to it also an amended notice of intention to file a claim herein.

This claim, however, clearly does not come within the class of claims mentioned in that act.   That act had in contemplation only claims '' for compensation or damages for or on account of the *appropriation* by the state of any lands, structures, waters, franchises, or other property in connection with the improvement of the Erie, Champlain and Oswego canals, *as provided by chapter 147 of the Laws of 1903,* and acts amendatory thereof and supplemental thereto.''   It is apparent that if what was done by the state here amounts to an '' appropriation '' it was not an '' appropriation '' made '' as provided by chapter 147 of the Laws of 1903, and the acts amendatory thereof and supplemental thereto.''   Section 4 of this act, as amended by chapter 273 of the Laws of 1909, specifically provides the manner of appropriating lands, structures and waters for the use and purposes therein set forth.   It is not contended by the claimant that any '' appropriation '' of its property was made here under and in accordance with the provisions of that section as so amended.   Not being an '' appropriation '' claim, therefore, within the intent and meaning of chapter 147 of the Laws of 1903 and the acts amendatory thereof as in force on July 21, 1909, it cannot be brought within the provisions of chapter 606 of the Laws of 1918.

The entire claim herein is based on the damages the claimant contends that it suffered by reason of the state's interference with the flow of water in the Oswego river; which flow claimant contends it was entitled to the use of unimpeded and unobstructed as a riparian owner, except as such flow was impeded

and obstructed by the two state dams mentioned aforesaid as they existed on July 21, 1909.

The theory of the law requiring the service of the notice of intention is that the state may have notice of the infliction of the injury of which the claimant complains at an early date thereafter, so that the state may investigate the occurrence, and if not at fault, provide for its defense while the facts concerning the matter are not only fresh in the minds of witnesses but also while witnesses are obtainable.

The claim for damages by reason of the appropriation of land on the part of the state is exempted from this rule, because all of the acts connected with such an appropriation are peculiarly within the knowledge of the state. Such an appropriation is an affirmative act on the part of the state. Such an appropriation is the main object to be accomplished by the different acts which lead up to it. It is the culmination of the plans, reasoning and intent of the agents of the state who accomplish it. It is an act of acquisition on the part of the state carried out with the intent and knowledge of the state to transfer the title of land from the owner to the state for a specific purpose. It is not a kind of damage inflicted upon a claimant by the state unknowingly and incidental to another exercise of the state's power, but it is the main end in view accomplished not only with the full knowledge of the state but by and through the premeditation and deliberation of its agents to vest ownership in the state for some purpose provided by law.

In the case at bar there was no intent on the part of the state to acquire any property of the claimant. There was no such purpose to be accomplished. The state had no intimation that it was to be charged with " appropriating " any of claimant's property until

about seven months after all the injuries suffered by claimant by reason of the state's work had ceased.

The state was simply engaged in reconstructing its dams in order to raise the elevation of the water in its canal on the opposite side of the river from claimant's plant. It interfered for a short time with the flow of water to claimant's mill during the work of reconstruction; but the ultimate result of the completed work of the state, so far as this claimant is concerned, was the bestowal upon it of a beneficence in the nature of an augmentation of its water power by the addition of about two feet to its available head.

The claimant strenuously contends that this is an " appropriation " claim, notwithstanding section 4 of the Barge Canal Law, and within the meaning of section 264 of the Code of Civil Procedure.

It cites the holding of the Court of Appeals in the case of *Oswego & Syracuse R. R. Co.* v. *State of New York,* 226 N. Y. 351, as an authority upholding such contention. We do not so view that case. Judge Cardozo in his very able opinion in that case in speaking of section 4 of the Barge Canal Law says: " That section does not apply where title to the land on which the appropriated structure stands is already vested in the state." That exception to the procedure designated in section 4 does not cover this case. And it is plain that the Court of Appeals did not intend to designate every invasion of a claimant's property by the state as an " appropriation." The Court of Appeals simply holds in the *Oswego & Syracuse R. R. Co.* case, as we understand that case, that when the state, in the course of Barge canal construction, destroys the physical structures of a citizen standing on state property, either by its own agents or by compelling the owner to accomplish such destruction, that such

destruction amounts to an " appropriation " of property within the meaning of chapter 640 of the Laws of 1915, and of chapter 420 of the Laws of 1916.

We are not at liberty to enlarge on that specific exception to section 4 of the Barge Canal Law. It is of the greatest importance to the individual and to the state that the owner of real property should be divested of his title only in accordance with the plain provisions of statute law. Otherwise real estate titles would be in great confusion; and the ownership of real property which ought to be, and which the law has always endeavored to make, a matter of the greatest certainty would be clouded with doubt and uncertainty.

When one citizen trespasses upon the real property of another such trespass in no way divests the owner of his title, but the trespasser must answer in damages for the injury committed.

And so it seems to us in this case that if the state by its structures has injured claimant's property by causing water to flow on or over it or by temporarily withholding the natural flow of water from it, it must pay for the damage claimant has suffered by reason thereof. Certainly title did not pass because the state committed this act of trespass. The state cannot acquire title in that manner against the will of the owner, nor can the owner vest his title in the state for that cause against the desire and in opposition to the will of the state.

We conclude, therefore, that this is not an appropriation claim within the meaning of the Barge Canal Law nor of section 264 of the Code of Civil Procedure; that this claimant can recover only such damages against the state, therefore, as accrued within a period commencing six months prior to filing its first notice of intention on March 27, 1914; that all of the damages

mentioned in its claim and for which it contended on the trial accrued before that time. *Buckles* v. *State of New York,* 221 N. Y. 418; *Butterfield* v. *State of New York,* Id. 701.

This case is similar in some respects to *People's Gas & Electric Company of Oswego* v. *State of New York,* lately decided in this court and affirmed with some modifications by the Appellate Division. *People's Gas & Electric Co.* v. *State of New York,* 18 Ct. Cl. 162; affd., 189 App. Div. 421. In that case claimant's water power was interfered with and absolutely shut off during Barge canal construction. Claimant did not contend that it was an "appropriation," although it might have done so with just as much propriety as that contention is made in this case. It was an interference with claimant's water power only during Barge canal construction, nothing more, the same as in this case.

Construction work by the state on its own property which necessarily results, as far as the state is concerned, in an involuntary temporary suspension of a claimant's ability to exercise its rights in and to its water power in the absence of any attempt on the part of the state to challenge the validity of those rights or to transfer the ownership of such rights from the claimant to the state, does not make the state amenable to the charge of having "appropriated" claimant's property.

The case of *Frisbie & Stansfield Knitting Co., Inc.,* v. *State of New York* is so similar to this case, so far as the legal principles applying to its disposition are concerned, as to be almost controlling if not absolutely decisive of our determination here. There this court held that the erection of a wall in the bed of the Oswego river by the state upon its own land was not an "appropriation or use" of the claimant's property

although the effect was to narrow the channel of the river and at certain seasons of the year to so check the flow of the river as to set back the water in claimant's tail race and upon its water wheels. This holding was affirmed by the Appellate Division. *Frisbie & Stansfield Knitting Co., Inc.,* v. *State of New York,* 189 App. Div. 341.

The claimant argues and it has authority for so doing that the acts of the state of which it complains constituted not only an interference with or an infringement upon its water power rights but also an actual " taking " of the same. But what was done by the state here is not that kind of a " taking " which amounts to an " appropriation " under the statutes above referred to. The theories and principles advanced herein which the court believes take this case out of that class of cases known as " appropriation " cases within the meaning of section 264 of the Code of Civil Procedure seem to be sustained and confirmed under varying facts and circumstances in the following cases: *Hayden* v. *State of New York,* 132 N. Y. 533; *Waller* v. *State of New York,* 144 id. 579; *Meneely* v. *Kinser Const. Co.,* 128 App. Div. 799; S. C., 130 id. 325; *Van Alstine* v. *Belden,* 41 id. 123; affd., 161 N. Y. 661; *Collins* v. *State of New York,* 103 Misc. Rep. 217; *Noakes* v. *State of New York,* 104 id. 277; *Silsby Mfg. Co.* v. *State of New York,* 104 N. Y. 562; *Reed* v. *State of New York,* 108 id. 407; *Butterfield* v. *State of New York,* 16 Ct. Cl. 24; affd., 221 N. Y. 701.

The claimant, therefore, not having filed a notice of intention to bring this claim against the state within six months from the time of the accrual of any of the damages complained of, the court is without jurisdiction to pass upon the same and the motion made herein by the state to dismiss the claim should be granted for that reason.

In view of the conclusion we have thus reached, it becomes unnecessary to pass upon the remaining questions presented by the state's motion to dismiss.

Webb, J., concurs.

Motion granted.