THOMAS W. EVANS, RESPONDENT v. MASSMAN CONSTRUCTION COMPANY, APPELLANT.—115 S. W. (2d) 163.

Kansas City Court of Appeals. April 4, 1938.

*Henderson & Deacy* and *Prince & Beery* for respondent.

*William Buchholz, Garrett & Ruark* and *Hume & Raymond* for appellant.

SHAIN, P. J.—Plaintiff below was the owner of certain lands lying along the Missouri River in the vicinity of where defendant, a private contractor, constructed dike No. 314.1. This dike was constructed under a contract between defendant and the United States Government, and constituted a part of a general program of improvement of navigation on the Missouri River in that area. Plaintiff's land was damaged by overflow alleged to have been caused by the negligence of defendant in construction of the dike.

Suit was filed in the Independence division of the Jackson County Circuit Court. The cause was removed to the United States District Court on motion of defendant under the theory defendant was the agent of the Federal Government at the time the work was done and that there were Federal questions involved. In due time the cause was by the United States District Court remanded back to the state court, for the announced reason that the case was one based on negligence of defendant and that no Federal question was involved. A trial to a jury in the Independence Division resulted in verdict for plaintiff, but, upon motion a new trial was granted. Thereupon a change of venue was granted and the case was tried before another

division of this circuit. From an adverse verdict and judgment, defendant appeals. The parties will be referred to as plaintiff and defendant.

The petition charges that "the defendant negligently constructed and erected and/or lengthened or elongated in said river, at a place south of and adjacent to levee district No. 2 in Ray and Carroll Counties, Missouri, certain dykes, revetments and matting in such manner and way as to narrow and compress the stream of said river into an area insufficient to permit the movement of said waters within the banks of said river. That the natural movement of the waters in said river at said point was thereby greatly obstructed and retarded and said water at the west of said artificial obstructions accumulated on or about June 21, 1932, in such a way as to heighten the surface of said river at said point. That this drove said waters against, upon and over the above mentioned levee, washing the same away and causing thousands of acres of crop laden land in said levee district, including plaintiff's land, to be overflowed and inundated and the crops and trees thereon to be destroyed, and subjecting plaintiff in common with other residents of said levee district to the burden of reconstructing said levee, and temporarily moving his family, his poultry and stock and his personal belongings from his said farm, and causing his home to become covered with mud and slime, damaging the floors and woodwork and causing plaintiff great inconvenience and hardships."

Defendant's answer pleaded that the Missouri River is a navigable stream and that the work it did "was done by it as agent or contractor of the United States and was done by it in the manner and form prescribed by the United States and in strict conformity with the plans and specifications furnished by the United States; that all of said work was done under the direction and supervision of the War Department of the United States, through its Engineers; and that said work has been accepted and paid for by the United States."

The reply was a general denial. The issue thus made by the pleadings was simply one of negligence on the part of defendant in the construction of the dike mentioned in the pleadings; of whether or not the work was in fact done "in the manner and form prescribed by the United States and in strict conformity with the plans and specifications," and without negligence; and, if not so done, whether the damage was a direct result of defendant's negligence, if any.

The evidence must be viewed in the light most favorable to plaintiff. It discloses that the dyke in question was built out from the south bank of the river, extending into and across the stream, towards the north shore, to a point 100 to 175 feet from the north bank; that the contract between defendant and the Government provided that defendant should be "responsible for all damages to persons or prop-

erty that occur as a result of his fault or negligence in connection with the prosecution of the work,'' and that defendant should strictly observe the laws of the United States affecting operations under the contract, and the United States would not be responsible for injury to private lands or other property by defendant. The dyke proper consisted of clumps of piling driven thru willow mats. Each clump consisted of three pilings driven into the bed of the river in a triangular formation, about five feet apart, the tops pulled together and tied with cable making a tripod effect. There was a row of clumps, spaced about 18 feet apart for a distance of 1200 feet, and a few feet down stream from this was a second row, the clumps of the second row spaced half way between those of the first. The remainder of the distance the dike consisted of three rows. The clumps were tied together with timbers or ''stringers'' at the top. The evidence further discloses that a fender mat was lashed to the pilings of the dike, the mat thus standing upright athwart the current of the river. This fender mat extended the whole length and was made of four inch boards stood upright at intervals of four inches, and woven over and under willow timbers laid crosswise with the boards. The purpose of the whole construction was to retard the flow of water, causing deposit of sand, silt and debris; to confine the current of the river within a more narrow channel; and to cause it to scour deeper in the open channel, and, at the same time, force the river gradually to the north, all in aid of navigation.

It was further shown that there was a standing order by the War Department providing that the Missouri River, at no point along its navigable course, should be obstructed or confined within a channel of less than two hundred feet; that an engineer, who was the chief inspector in charge of the improvement along this portion of the river, including the point where the dike was built by defendant, had given specific orders that the north extremity of the dike should not approach nearer than two hundred feet to the north shore of the river. There was evidence from which the jury could find that defendant knew of these instructions. The United States engineer in charge of river improvements in the Missouri River section, a witness, for defendant, stated in evidence that there was no need for fender or screen mat being erected across the river at this point. He had denied its existence in the previous trial and in this case testified it was only constructed for a distance of 707 feet from the south bank. There was no mention of such a mat either in the contract between the Government and defendant, or anywhere else in writing. But there was ample evidence of its construction. He also stated the effect of such a mat was to further retard the flow of the river and that the water above the dike was a foot higher than it was below, about the time of the levee break.

Plaintiff owned and operated a farm located within a levee district on the north side of the river opposite the point where the dike was constructed. The farm, and other lands within the district, was protected from floods by a levee. When construction on the dike had reached the point above mentioned the river began to rise rapidly and continued until the water overflowed the top of the levee and flooded the district, including plaintiff's farm. The water left the district after it burst open the flood gates thereof *outward* from the pent up force from *inside* the district.

It is plaintiff's contention that the construction of the dike across the current of the stream to a point less than two hundred feet from the north side was negligence, in that it was against a standing order of the War Department, against the orders of the chief inspector in charge of the improvement, and was not covered by the contract. He also contends that any person in the exercise of ordinary care, prudence and intelligence ought to have known that the current of a great river such as the Missouri could not safely be confined within an unobstructed channel less than two hundred feet wide. He also contends that the construction of the mat hereinbefore mentioned served to aggravate the situation and to further impede the flow of the water and to dam it up behind the dike, causing the river to leave its banks and rise from four to five feet higher upstream from the dike and levee, than it did below, thus overflowing the levee; that such construction was negligent under all circumstances shown; that such negligence was the direct and proximate cause of plaintiff's damage; and that the extension of the dike to a point less than 200 feet from the north bank, as well as the construction of the screen or fender mat, was beyond and in excess of instructions or authority of the United States.

The evidence offered showed that, just prior to the water going over the levee, the water upstream along the length of the dike was from four to five feet higher than it was on the downstream side of the dike; that the water "cascaded" over the dike; that the noise of the cascading water could be heard for a mile; and that the floodwater line on trees growing along the river bank was noted by witnesses, just after the flood receded, and that from such marks the water was from four to five feet higher upstream from the dike than it was downstream therefrom; and that the water from within the levee district burst the concrete floodgate *outward, toward* the river, indicating the water pressure from *within* must have been greater than that from without, *below* the dike. This evidence, if true, (and for the purpose of this opinion we must accept it as true) indicates that the dike dammed up and obstructed the free flow of the water, causing it to rise higher above the dike than it did below, and forced the water level high enough, above the dike, to cause it to overflow

the top of the levee. From the elevation of the top of the dike, the elevation of the top of the levee, all as shown in evidence, and from the evidence of the stage of the river at this time as compared with its stage at other times during the time the levee was there in about substantially the same condition it was in when this disaster occurred, we are forced to the above conclusion.

We don't think a fair consideration of plaintiff's own evidence in this connection brings him within the rule laid down in McCoy v. Home Oil & Gas Company, 60 S. W. (2d) 713, l. c. 724, whereby he is judicially bound by his evidence to the effect that the water was no higher at and above the dike than it was below, because his evidence thereon was as to the condition after the levee broke and the pressure from above may have lessened with the consequent release of the pent up waters. It was not a judicial admission, having the effect claimed by defendant, but was evidence as to the general situation after the break occurred and was to be considered by the jury along with other evidence in the case.

Defendant also urges that much of the evidence in connection with the above facts was merely speculative and estimative as to exact figures and distances. Much of it on both sides necessarily had to be and was estimation, because it was based on observation made during the high water when exact measurements could not be made. But there was a great mass of evidence on many different points bearing on the ultimate facts sought to be established. There was much conflict of evidence and some witnesses for defendant did not testify in the case at bar as they had in the previous trial. In such a case as this, with the mass of evidence offered and with its wide ramifications, we hold that it cannot be ruled by Van Bibber v. Swift & Company, 286 Mo. 317, 288 S. W. 69, l. c. 76, and other cases of similar import. The jury had the duty of weighing the evidence and of weighing its value as to the many cumulative points urged tending to establish the main contention. Their judgment must be ours. Especially is this true, where, as here, two different juries have arrived at the same conclusion.

Defendant urges that it was the agent of the United States Government in making the improvements mentioned and that it cannot be liable to respond in damages. While we have not permitted our judgment of this point to be controlled by the action of the United States District Court in denying Federal jurisdiction, yet such fact is worthy of comment.

From an examination of many cases we think the following clearly declares the law applicable to the case at bar:

"If the bridge was a lawful structure, and the injury done to the riparian lands of the plaintiff below does not constitute an appropriation of his land or a 'taking' thereof, within the meaning of the con-

stitutional requirement as to compensation, and the injury is merely incident to the exercise of public authority acting within its jurisdiction, in good faith, *and without negligence,* the injury is *damnum absque injuria.* As a riparian proprietor, the plaintiff was subject to all the injury, not amounting to a taking of his land, which might result from lawful improvement of the navigation of the stream, . . . (Italics ours). [Salliotte v. King Bridge Company, 122 Fed. 378, 1. c. 382.]

Where the very act of improvement of navigation *necessarily* results in damages to riparian owners, they may not recover from the Government except the damage is so great as to amount to confiscation or appropriation of the property. In that event the Government is liable to pay the fair value thereof because the constitution itself makes it liable. [United States v. Lynah, 188 U. S. 445, 1. c. 472.] In such case the Government, and it only, is liable; for the taking was for and by the Government and the agent is not liable. [U. S. v. Lynah, 188 U. S. 445, 1. c. 465; Nelson v. McKenzie-Hague Company, 256 N. W. 96, 1. c. 100.] But where the damage is consequential only, as in this case, the Government is not liable, because consequential damages are, at most, but tortious; and the Government cannot be sued in tort. [Mills v. United States, 46 Fed. 738; Jackson v. United States, 230 U. S. 1. c. 8.] If the consequential damages necessarily follow from the improvement, *and the agent is not guilty of negligence, and acts within the law and his instructions* the exemption of the sovereign extends to the agent. [45 C. J., 443; Transportation Company v. Chicago, 99 U. S. 635, 1. c. 641 and 642; Fitzgibbon v. Dredging Company, 141 Iowa, 329; Scranton v. Wheeler, 179 U. S. 141, 1. c. 146; C. & T. R. Power Company v. Lawson, 139 Tenn. 354, 1. c. 371.]

It does not follow, however, simply because the sovereign does not provide a remedy to an injured property owner whereby redress may be had as against the Government, that the landowner remains wholly without remedy. That depends upon the agent of the Government acted *within the law* and *within his granted authority and power;* and also whether or not he was guilty of any negligence in doing the thing that he was commissioned to do, assuming that he acted within the law and within his instructions. There is no doubt but that an officer and agent of the United States is liable to respond in damages for a tortious act, even though the Government itself cannot be sued thereon, if he, in fact, acts outside of and in defiance of the law. The fact that he acts in obedience to orders of his superior officer and in good faith is not a defense. [The Flying Fish (Little v. Barreme), 2 Cranch 170; Ryan v. Chicago B. & Q. R. R. Co., 59 Fed. (2d) 137, 1. c 144.]

We therefore hold that if defendant was negligent in the construc-

tion of the dike or if he acted outside of and beyond his authority and contract (for there is no question but that, since the Missouri River is a navigable stream, the Government had a right to make whatever improvements in the interests of navigation it saw fit to make, so long as same was legally authorized, as this improvement was) and if, by reason of said negligence or unauthorized act, plaintiff was damaged, it will not avail defendant simply to say that he was in the employ or under contract with the United States Government. In order to escape liability he must be, in all particulars, within the rule laid down in Salliotte v. King Bridge Company, *supra*.

It was held in Fitzgibbon v. Dredging Company, 141 Iowa, 329, that where construction of a drainage ditch in the manner contemplated between defendant and the agency of the state in their contract results in consequential damages to plaintiff's land there is no liability on part of defendant, and that to be liable he must be guilty of negligence in the manner of construction or must have departed from the usual and accepted methods employed in like work, whereby the damages followed, or he must be bound by contract to do certain things, the breach of which resulted in the damages complained of.

Mr. Massman testified that if the construction of this dike caused the water upstream therefrom to rise as much as a foot above that below, it established improper construction, and that it would indicate the specifications had not been followed. Two engineers testifying for defendant stated the water was a foot higher above the dike than it was below; and that it sloped back upstream a distance of 500 feet before it levelled off. There is no contention on part of defendant that there was any authority for construction of the screen mat. In fact its construction was vigorously denied in the first trial by the same witnesses who, in this case, admitted that 700 feet was constructed, but still denied construction of any more footage; and stated that it was not needed, served no good purpose at this point, and that there was no written record authorizing it. The contract provided that any substantial departures therefrom must be authorized in writing. Yet there is substantial evidence that it extended the entire length of the dike.

All Government engineers testifying for defendant state that they had orders not to permit the north end of the dike to extend closer than two hundred feet from the north bank; and they, as well as Massman, say that it did not. Such engineers and inspectors stated in evidence that defendant's superintendent was present when the distance was measured on one occasion. Therefore defendant must have known of this requirement. True, the same witness stated that by tapeline measurement that there was more than two hundred feet of open channel. But defendant's superintendent, altho present at the trial, did not testify; and there was an array of witnesses who

testified that the open channel was less than two hundred feet wide at the time of the flood. The jury must be the judge as to whom to believe on this point. After verdict we must believe the evidence favorable to plaintiff.

We think the above indicates that defendant departed from the usual and accepted methods employed in like work; that it negligently, and without authority or power under its contract, constructed a fender mat which it attached to the dike the entire length thereof, and which had the effect, under the evidence, of increasing the solid obstruction to the flow of the water, for every eighteen feet in width thereof, from eight feet to thirteen feet or more. That is, but for the unauthorized mat, the piling obstructed but eight feet out of each eighteen feet of the channel of the stream, leaving ten feet unobstructed; but, when the mat was added, it obstructed another five feet, leaving but five feet of every eighteen feet unobstructed. We hold further that it was at least negligence, in the face of positive instructions to the contrary given to all inspectors, and which are bound to have been known by defendant's superintendent, to construct the dike so as to approach the north bank within less than two hundred feet. And the fact that the inspectors did not forcibly restrain defendant from violating the orders of the Government is not a defense. It was incumbent on defendant to obey the orders of the master, not those of the master's servants, especially when he knew what orders the master had given to the servants. Without the protection of the authority of the Government in this case, or the legal authority of the State or one of its political subdivisions, no one has the right to dam up or obstruct a running stream so as to cause it to overflow its banks to the damage of riparian owners. [Imler v. City of Springfield, 55 Mo. 119, 1. c. 126.] Neither the excessively narrowing of the channel to a width of less than 200 feet, nor the fender mat, were included in the plan of the Government so as to bring this case within the holding in Meneely v. Kinser Construction Company, 113 N. Y. Sup. 183, 1. c. 184; Nelson v. McKenzie-Hague Co., *supra*; nor Fitzgibbon v. Dredging Company, *supra*.

We think the effect of the court's instruction and holding with reference to violation of a War Department order to the effect that the channel should be left open for a space of 200 feet, was not to make defendant liable for its violation as a matter of law. Rather, it permitted a recovery on that ground if it showed a departure from the Government plan, instructions, and orders by and to the engineers and inspectors in charge, as shown by the evidence, which departure may have contributed to, or caused the damage. That is the clear purport of the instruction, and, viewed in that light, it is within the issues made by the pleadings.

However, even if the War Department order raises an issue outside

of the pleadings yet testimony regarding the standing order of the War Department was offered and received in evidence without objection. Counsel, several times, without objection in the record, referred to the fact. In such cases the petition will be considered as if it had been amended to conform to the evidence. [Ilgenfritz v. Missouri P. & L. Co. (Mo.), 101 S. W. (2d) 723, l. c. 726; Koonse v. Standard Steel Works Co. (K. C.), 300 S. W. 531; Gannaway v. Pitcairn (St. Louis), 109 S. W. (2d) 78, l. c. 82; Smith v. Atlanta Life Insurance Company (K. C.), 102 S. W. 757, l. c. 758.]

Error is urged because of the refusal of the court to give defendant's instruction 8, which instruction would have limited recovery to a failure to comply with the contract between defendant and the United States. The instruction was properly refused because it is in conflict with plaintiff's main instruction, and also because plaintiff is not bound by compliance with the contract in this case. While the above contention was defendant's theory of the case, plaintiff does not claim that what defendant did *under* his contract caused his damage. He complains that defendant went outside of and beyond the contract, not directly contrary to its provisions, but beyond its provisions. The construction of the fender mat was not prohibited by the contract; it simply was not mentioned therein, nor was it shown to have been authorized by any person authorized to speak for the Government. In fact the Government engineers and authorized agents, aside from inspectors, denied any knowledge whatever of its construction. Nor was there anything in the contract prohibiting the projection of the dike to and beyond the north bank of the river; yet there was a standing War Department order prohibiting any obstruction approaching closer than 200 feet, and all inspectors and engineers, and, we think, defendant also, knew that it was improper not to leave a 200-foot channel. But defendant's liability in this case does not rest on what it did under or in violation of the contract; it rests on what it did that isn't even mentioned therein. Such acts, without protection of Governmental authority, are tortious in that they constituted an unlawful construction of a stream in this State; and it must be held to account for consequential damages flowing therefrom.

There was sufficient evidence from which the jury could find that the unauthorized and, therefore, *unlawful* construction caused the damages.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. Judgment is affirmed; *Bland, J.,* and *Reynolds, J.,* concur; *Shain, P. J.,* dissents in separate opinion, and, at his request, the court certifies to Supreme Court.

## DISSENTING OPINION.

SHAIN, P. J.—We cannot agree with the majority opinion herein for several reasons.

The record discloses that such overflow that is complained of may be occasioned by many causes. Under such condition the burden is upon the plaintiff to show that the injury of which he complained was caused by reason of the negligent or wrongful acts of the defendant that is charged in his petition.

We conclude that there is no substantial evidence from which it can be concluded that a dike constructed in exact conformity with the authority and plan of the government would not have caused the overflow and damage complained of. Further, when all of the evidence be considered, we conclude it does not establish the fact that the overflow and injury might not have been caused by other causes than the construction of the dike complained of, and hence plaintiff has not met the burden.

We conclude that much of the evidence in the case consists of mere speculation or guess work upon the part of the witnesses. Such evidence is not sufficient to convict the defendant of having caused the damage.

The judgment should be reversed. We conclude that the majority opinion is in conflict with Cole v. Uhlmann, 100 S. W. (2d) 311; Hamilton v. St. Louis-San Francisco Ry. Co., 318 Mo. 123, 300 S. W. 787; Warner v. St. Louis & Meramec River R. R. Co., 178 Mo. 125, 77 S. W. 67, and we request that this cause be certified to the Supreme Court of Missouri for the reasons stated above.